# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3226

_____

Shannon Montgomery

*Plaintiff - Appellant*

v.

Martin O'Malley, Commissioner of the Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas

_____

Submitted: September 24, 2024
Filed: December 13, 2024

_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

Shannon Montgomery appeals the district court's[1] order affirming the Social Security Administration's (SSA) denial of his claim for disability benefits. We affirm.

---

[1]The Honorable Patricia S. Harris, United States Magistrate Judge for the Eastern District of Arkansas, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

# I. Background

In May 2013, Montgomery filed a claim for a period of disability and disability insurance benefits based on his medical conditions of chiari malformation, syringomyelia, syrinx cavities, and degenerative disc disorder. After a hearing, the administrative law judge (ALJ) denied Montgomery's claim for disability benefits. The Appeals Council declined to review the ALJ's decision, and Montgomery filed a complaint in federal court seeking reversal of the SSA's denial of benefits.

In September 2016, the district court reversed the SSA's decision, remanded Montgomery's claim, and ordered the ALJ to send Montgomery for a consultative examination and adequately consider his work history (2016 Remand Order). On remand, the ALJ did not send Montgomery for a consultative examination and again denied Montgomery's claim for benefits. Montgomery filed a second complaint in federal court, and the SSA moved to have the ALJ's decision reversed and remanded for further proceedings, which the district court granted.

On the second remand, the Appeals Council ordered the ALJ to send Montgomery for a consultative examination, evaluate Montgomery's symptoms, consider Montgomery's maximum residual functional capacity (RFC), and obtain supplemental evidence from a vocational expert to clarify the extent of the assessed limitations on Montgomery's occupational base. The ALJ sent Montgomery for a consultative examination with Dr. Samuel G. Meredith. After a hearing, the ALJ again denied Montgomery's claim.

The Appeals Council remanded the claim a third time and ordered the ALJ to (1) apply the correct regulations for evaluating medical opinion evidence; (2) obtain evidence from a medical expert; (3) further consider source opinions and explain the weight given to each opinion; (4) further consider Montgomery's RFC and provide specific references to evidence in the record in support of the assessed limitations; and (5) obtain supplemental evidence from a vocational expert. The ALJ obtained

evidence from a vocational expert and Dr. Louis A. Fuchs, a medical expert in orthopedic surgery.

In January 2022, after another hearing, the ALJ denied Montgomery's claim for disability benefits. The ALJ found Montgomery had the severe impairments of degenerative disc disease of the cervical and lumbar spine and the non-severe medical impairments of chiari malformation, carpal tunnel syndrome, right-ear hearing loss, knee pain, obesity, left shoulder impingement, and anxiety. The ALJ conducted an RFC analysis and found Montgomery could perform light work as an assembler or inspector and thus concluded he was not disabled.

The Appeals Council declined jurisdiction, making the ALJ's decision final. Montgomery filed a third complaint in federal court. The district court affirmed the denial of benefits. Montgomery appeals.

## II. Analysis

We "review[] de novo a district court's decision affirming the denial of social security benefits." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). We must affirm if the ALJ's decision "is supported by substantial evidence in the record as a whole." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)).

"Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011). "We consider both evidence that supports and detracts from the ALJ's decision, but even if inconsistent conclusions may be drawn from the evidence, the decision will be affirmed where substantial evidence on the record as a whole supports the ALJ's decision." *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004). We will not reverse merely because substantial evidence would have supported a contrary outcome. *Schmitt v. Kijakazi*, 27 F.4th 1353, 1358 (8th Cir. 2022).

-3-

The SSA follows a five-step process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a). Consistent with this process, the ALJ considers (1) the claimant's work activity; (2) the medical severity of the claimant's impairments; (3) whether the impairment meets or equals any listing of impairments; (4) the claimant's RFC assessment and past relevant work; and (5) the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Id.* § 404.1520(a)(4)(i)–(v). If at step three the claimant's impairment does not meet or equal a listed impairment, then the ALJ must, before proceeding to step four, assess and make a finding about the claimant's RFC "based on all the relevant medical and other evidence in [the] record." *Id.* § 404.1520(e).

At steps one and two, the ALJ found Montgomery "did not engage in substantial gainful activity" during the relevant period and had degenerative disc disease of the cervical and lumbar spine as well as several non-severe medical impairments. At step three, the ALJ determined Montgomery's impairments did not meet or equal any listed impairments. The ALJ found Montgomery had an RFC sufficient to perform light work. At step four, the ALJ concluded Montgomery was unable to perform any past relevant work. But, at step five, the ALJ determined Montgomery could make a successful adjustment to other work that existed in significant numbers in the national economy and concluded a finding of "not disabled" was appropriate.

The ultimate issue on appeal is whether there is substantial evidence in the record as a whole to support the ALJ's assessment of Montgomery's RFC and denial of benefits. But first, we must address Montgomery's arguments regarding the 2016 Remand Order.

Montgomery first argues a prior ALJ failed to comply with the 2016 Remand Order because he refused to send Montgomery for a consultative examination. Montgomery is correct, but he already sought judicial review of the prior ALJ's non-compliance and a subsequent ALJ sent Montgomery for a consultative examination with Dr. Meredith. *See Bradford v. O'Malley*, 104 F.4th 1055, 1059

(8th Cir. 2024) ("The law of the case doctrine prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings . . . ." (quoting *Brachtel v. Apfel*, 132 F.3d 417, 419 (8th Cir. 1997))). Even so, Montgomery argues Dr. Meredith's report did not comply with the 2016 Remand Order because Dr. Meredith failed to comment on Montgomery's functional limitations or work-related functioning. The 2016 Remand Order, however, did not require Dr. Meredith to comment on Montgomery's functional limitations or work-related functioning. The 2016 Remand Order required the ALJ to "re-assess Montgomery's [RFC]," and "[a]s a part of doing so," the ALJ was required to "send Montgomery for a consultative examination."

The consultative examination was meant to assist the ALJ in reassessing Montgomery's RFC, and here, the ALJ considered Dr. Meredith's findings as part of his RFC assessment. *See Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) ("Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the [SSA]." (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007))). For example, the ALJ considered observations from Dr. Meredith that Montgomery had restricted range of motion, subdued reflexes, tenderness in his neck and back, a normal gait, degenerative disc disease, and a herniated disc. Montgomery, however, appears to argue that without a consultative examination to inform the ALJ of his functional limitations, the ALJ was left to draw his own inferences from the medical record in reassessing Montgomery's RFC. Not so. The ALJ's assessment was based in part on the RFC conclusions reached by two state agency physicians, who reviewed Montgomery's case and found he was able to perform work at the light exertional level with hazard precautions. The ALJ also considered the functional limitations noted by Dr. Fuchs.

Montgomery next argues the ALJ failed to comply with the 2016 Remand Order because the ALJ "*never mentioned* that Montgomery worked 21-years as a police officer" and ignored Montgomery's work record when assessing the credibility of his pain reports. The 2016 Remand Order required the ALJ to

reevaluate Montgomery's "credibility as to his subjective complaints of pain,"[2] which included giving adequate consideration to Montgomery's prior work history. *See Aborn v. Sullivan*, 959 F.2d 111, 112 & n.1 (8th Cir. 1992) (noting under *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), "an ALJ cannot reject subjective complaints of pain based solely on the lack of medical support, but instead must consider a variety of factors," including a "claimant's prior work record").

The ALJ was not required to specifically reference the duration of Montgomery's work as a police officer in evaluating whether his subjective complaints of pain were consistent with the medical evidence. *Cf. Lawrence v. Saul*, 970 F.3d 989, 995 (8th Cir. 2020) (providing the duration, frequency, and intensity of the pain or other symptoms is a factor in determining whether a claimant's subjective complaints of pain are consistent with the medical evidence, not the duration of prior work). The district court ordered the ALJ to adequately consider Montgomery's work history in evaluating his subjective complaints, which is what the ALJ did. The ALJ considered Montgomery's testimony "that he worked as a police officer until his alleged onset date" of November 20, 2012. The ALJ also considered Montgomery's testimony that his non-severe medical impairment symptoms (headaches and vision problems) "had been present since 2007 and he had been able to work as a police officer." The ALJ also noted Montgomery reported "he had a neck fusion surgery in 2007 at C6-7 and he was able to return to work" and "had to stop working in 2012 because of back problems." The ALJ further stated on the record he "had no doubt that [Montgomery is] no longer able to continue as a police officer." Thus, we reject Montgomery's arguments regarding the 2016 Remand Order.

---

[2]*See Lawrence v. Saul*, 970 F.3d 989, 995 & n.6 (8th Cir. 2020) (noting Social Security Ruling 16-3p, 2017 WL 5180304, *2 (Oct. 25, 2017), eliminated the term "credibility" and clarified the SSA's "review of subjective assertions of the severity of symptoms" is an "examination for the level of consistency between subjective assertions and the balance of the record as a whole").

This brings us to the primary issue — whether substantial evidence in the record as a whole supports the ALJ's assessment of Montgomery's RFC and denial of disability benefits.  We conclude it does.

Montgomery argues the ALJ relied primarily on a non-examining physician's opinion to determine Montgomery's RFC.  Montgomery specifically argues Dr. Fuchs's opinion (1) should have been given little or no weight because he never examined Montgomery, (2) lacks supporting evidence and explanations, and (3) is inconsistent with other medical and non-medical evidence in the record.

"It is well settled that an ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant's impairment."  *Harris*, 356 F.3d at 931.  Therefore, Dr. Fuchs need not have been an examining source for the ALJ to have considered his medical opinion.  *See Hacker v. Barnhart*, 459 F.3d 934, 939 (8th Cir. 2006) ("The regulations specifically provide that the opinions of non-treating physicians may be considered.").  And the ALJ gave only "some weight" to Dr. Fuchs's opinion.

Though generally, more weight is given to the medical opinion of an examining source than a non-examining source, 20 C.F.R. § 404.1527(c)(1), "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the SSA] will give that medical opinion," *id.* § 404.1527(c)(3).  Thus, "because [non-examining] sources have no examining or treating relationship with [the claimant], the weight [the SSA] will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions."  *Id.* § 404.1527(c)(3).  Further, "the more consistent a medical opinion is with the record as a whole, the more weight [the SSA] will give to that medical opinion."  *Id.* § 404.1527(c)(4).

As to supportability, Dr. Fuchs listed six references to Montgomery's medical record in support of his opinion.  *See id.* § 404.1527(c)(3) (supportability). Dr. Fuchs diagnosed Montgomery with "chronic cervical, lumbar-sacral myofascitis" and

opined on Montgomery's functional limitations, concluding he (1) could lift and carry ten pounds continuously and twenty pounds occasionally; (2) could at one time sit, stand, and walk for two hours; (3) could sit for eight hours and be ambulatory for four to six hours; (4) did not require a cane and had no limitations in his arms and legs; (5) could occasionally climb stairs and ladders, balance and stoop, and be exposed to unprotected heights, mechanical parts, and extreme temperatures; (6) should have no exposure to vibrations; (7) could frequently drive; and (8) had no limitations with activities of daily living.

Montgomery, however, argues the listed references to his medical record do not support a myofascitis diagnosis, half of the listed references are from after his last-insured date, and Dr. Fuchs failed to list references supporting his opinion on Montgomery's functional limitations. But whether Dr. Fuchs's diagnosis was supported by the listed references is immaterial because the ALJ concluded Montgomery suffered from degenerative disc disease based on the other medical evidence. The listed references from before Montgomery's last-insured date show Montgomery complained of neck and back pain, as well as numbness and weakness in his arms, and he had reduced range of motion and tenderness in his neck. The ALJ concluded the medical record, which included the listed references, supported Dr. Fuchs's opinion. Dr. Fuchs recognized Montgomery had chronic neck and back impairments and assessed Montgomery's functional limitations based on those impairments.

As to consistency, Montgomery argues Dr. Fuchs's myofascitis diagnosis is inconsistent with other medical evidence in the record. *See id.* § 404.1527(c)(4) (consistency). An inconsistent diagnosis, however, does not negate Dr. Fuchs's opinion on Montgomery's functional limitations because it was supported by other medical evidence. Nevertheless, Montgomery claims his work limitations would have been more severe if they were based on nerve compression and arthritis in his spine as opposed to chronic muscle pain. But Montgomery's concern about having work limitations based on a "more serious" diagnosis was considered by the ALJ because he ultimately concluded Montgomery was unable to perform any past

-8-

relevant work as actually or generally performed. Based on evidence from the vocational expert, the ALJ concluded "there would be no jobs at the light exertional level due to the standing of only two hours of an eight-hour workday" and instead considered jobs at the sedentary exertional level that would meet Montgomery's RFC. *See id.* § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.").

Montgomery also argues Dr. Fuchs's opinion is generally inconsistent with Montgomery's testimony about his symptoms, course of treatment, and daily activities. But it is "the statutory duty of the ALJ, in the first instance, to assess the credibility of the claimant and other witnesses." *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995) (quoting *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992)). "As we have stated many times, we do not re-weigh the evidence presented to the ALJ," *id.*, and decline Montgomery's invitation to do so now.

In addition to Dr. Fuchs's opinion, the ALJ also considered opinion evidence from treating and examining physicians. The ALJ gave "great weight" to the physical opinions of two state agency physicians while giving "little weight" to a primary care physician's opinion from 2012 and "some weight" to Dr. Fuchs's opinion. The ALJ determined the two state agency physicians' assessments were supported by the objective medical evidence and concluded their assessments accounted "for the limitations and reduced range of motion caused by the neck and back impairment." *See* 20 C.F.R. § 404.1513a(b)(1) (requiring the ALJ to consider evidence from state agency medical consultants because they "are highly qualified and experts in Social Security disability evaluation").

The ALJ also considered Montgomery's objective medical evidence of neck surgery, MRI scans, an EMG study, physical examinations, pain management treatments, Dr. Meredith's consultative examination, and diagnoses along with Montgomery's allegations of disabling symptoms and limitations. After careful consideration, the ALJ concluded the record supported an RFC that "would be

limited to light work with postural and environmental limitations." Based on the substantial evidence in the record as a whole, the ALJ was within his discretion to discount Montgomery's complaints about pain in assessing his RFC and conclude he was not disabled. *See Jones v. Astrue*, 619 F.3d 963, 975 (8th Cir. 2010) ("[A]n ALJ is entitled to make a factual determination that a [c]laimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." (quoting *Baker v. Barnhart*, 457 F.3d 882, 892–93 (8th Cir. 2006))); *Harris*, 356 F.3d at 928 (providing "even if inconsistent conclusions may be drawn from the evidence, the decision will be affirmed where substantial evidence on the record as a whole supports the ALJ's decision").

### III. Conclusion

We affirm the judgment of the district court.

_____